UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VALERIE J. BLACKBURN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No.1:08-cv-1725-WTL-DML |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Valerie Blackburn appeals the final determination of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). She filed her application for SSI in August 2003, claiming that she had been unable to work since January 1993 due to degenerative joint disease, heel spurs and depression.[1] The Commissioner denied her claim initially and on reconsideration. At Blackburn's request an Administrative Law Judge ("ALJ") conducted a hearing in September 2006. In an October 2007 ruling, the ALJ found that despite her impairments Blackburn could perform a full range of medium, unskilled work and therefore did not qualify for SSI. The Appeals Council denied Blackburn's request for review, which makes the ALJ's decision the final decision of the Commissioner and appealable to this Court. While Blackburn had legal representation at the ALJ hearing, she pursues her appeal to this Court on her own.

The applicable standard of review is deferential: courts must uphold decisions of the Commissioner if his factual findings are supported by substantial evidence in the record and

---

[1] Blackburn's earlier application for SSI was denied in 2002; she did not appeal that denial.

no material error of law has occurred. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir.2001).  If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it constitutes substantial evidence. *Richardson v. Perales*, 402 U.S. 389 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir.2004).  This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations.

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.  Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir.2004) (citations omitted).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382(a)(3)(A).  A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3) (B).  The

combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B) and 1382a(a)(3)(G).

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. §§ 404.1520 and 416.924. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id*. At the first step, if the claimant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the claimant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.924(c). Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is deemed disabled. The Listing of Impairments contains medical conditions defined by criteria that the Administration has pre-determined are disabling. 20 C.F.R. § 404.1525. If the claimant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. §§ 404.1545 and 416.945. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. Fifth, considering the claimant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work in the relevant economy.

The burden rests on the claimant to establish steps one through four; the burden then shifts to the Commissioner at step five to establish that there are jobs that the claimant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir.2004). If a claimant has only exertional limitations, the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables correlating a claimant's age, work experience, education, and RFC with predetermined disabled or not-disabled findings. 20 C.F.R. §§ 404.1569 and 1569a. If a claimant has non-exertional limitations or exertional limitations that restrict the full range of employment opportunities at her RFC level, then the grids may not be used and a vocational expert must testify regarding the numbers of jobs in the economy for a person with the claimant's particular vocational and medical characteristics. *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir.1993). The grid result, however, may be used as an advisory guideline in such cases. 20 C.F.R. § 404.1569.

In the case at bar, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since August 26, 2004, the application date.
2. The claimant has the following severe impairments: obesity, fibromyalgia, heel spurs and hypothyroidism.
3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.
4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of medium work. She can lift fifty pounds occasionally and she can lift and carry twenty-five pounds frequently. She can walk and stand for six hours during an eight-hour work day. She can intermittently sit and frequently bend or stoop. She has no mental limitations and can perform all of the basic mental activities required by competitive remunerative unskilled work. Specifically, the claimant can understand, remember, and carrying out simple instruction, make judgments commensurate with the functions of unskilled work, respond appropriately to supervision, co-workers and usual work situations, and she can deal with

          changes in a routine work setting.
5.     The claimant can probably perform past relevant work but that cannot be established conclusively.
6.     The claimant was born on May 16, 1959 and was 45 years old, which is defined as a younger individual age 18-49, on the date her application was filed.
7.     The claimant has at least a high school education and is able to communicate in English.
8.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.
9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
10.     The claimant has not been under a disability, as defined by the Social Security Act.

        The record indicates that Blackburn was forty-seven years of age at the time of the hearing before the ALJ. She testified that she was between 5' 2" and 5' 3" and weighed 245 pounds. She attended school through the eleventh grade and subsequently earned her high school equivalency diploma. Her prior work experience includes cashier, restaurant work and a bell ringer for the Salvation Army.

        At the hearing, Blackburn testified that she thought that she could stand about thirty minutes at a time, and could walk "a couple blocks or so." In addition, Blackburn explained that she had trouble sitting because of fibromyalgia, and testified that her doctor recommended she not lift more than ten or fifteen pounds at a time. She also said that sometimes she cleaned and did other things around the house, but not often because of fibromyalgia and depression. Blackburn also explained that she had attempted to lose weight, but had difficulty doing so because of her hypothyroidism.

        Based on his review of all of the medical records and Blackburn's testimony during the hearing, the ALJ found that Blackburn had satisfied her burden with regard to the first two steps of the sequential evaluation process; that is, she was not working and she had severe

impairments - namely heel spurs, fybromyalgia, obesity, and hypothyroidism.  However, he found that these impairments did not meet or equal a listed impairment.  He considered her heel spurs an impairment, but noted that heel spurs were not a listed impairment and there was no evidence of long term functional loss.  There is no listing for fybromyalgia; however, the ALJ considered and compared the impairment with the listing for musculoskeletal disorders and undifferentiated connective tissue disorders.  He found there was a lack of medical evidence to satisfy all of the criteria necessary to qualify under either of those listings.  Obesity is not a listed impairment, but the ALJ looked at how Blackburn's obesity affected the rest of her body and found that while it may aggravate her fybromyalgia and heel spurs, again, there was no medical opinion of record indicating that it caused any functional loss.  Because her hypothyroidism had not resulted in severe recurrent tetany, cataracts, or recurrent convulsions it did not meet the requirements of Listing 9.04 for that impairment.  In the end, the ALJ found that none of Blackburn's impairments equaled a listed impairment and amply supported his findings with reference to the available medical records.

      With no listed impairment to rely on for a determination of disability, the ALJ was next required to determine Blackburn's RFC.  He determined that she was capable of performing the full range of medium work.  He reached his conclusion based upon the findings of an examining internist in November 2004, the conclusions of agency physicians in 2005, and a 2004 mental status exam and memory test.  Further, the ALJ noted the lack of any opinion from a treating physician that would indicate that Blackburn was significantly incapacitated.  Her most significant mental health treatment was group therapy for drug and alcohol abuse that was required in order for Blackburn to qualify for HUD housing.

Otherwise there was no evidence of any long term debilitating effect from her depression, and she had not been hospitalized for any of her conditions for more than two years.

The ALJ also considered Blackburn's own testimony in reaching his conclusion regarding her RFC.  Consistent with 20 C.F.R. §416.929, he evaluated her reported symptoms.  He noted that the objective medical evidence did not support the severity of the allegations of Blackburn regarding the debilitating nature of her mental and physical problems, that she had not undergone medical treatment consistent with the level of pain she alleged, and that her own testimony regarding the activities she has engaged in, such as attending college classes, riding public transportation, cooking, and cleaning were inconsistent with that level of pain.  While recognizing that she did have a variety of symptoms which could cause her significant problems on occasion, the ALJ found that her testimony as to the frequency, duration and intensity was not entirely credible.

It is extremely difficult to determine from Blackburn's submission which of the ALJ's findings she challenges as lacking the support of substantial evidence.  Blackburn states her disagreement with the ALJ on several general issues (most discernibly, his RFC determination), but she has not really identified which of his findings lacks support, and from the Court's reading of the ALJ's decision and its review of the record it appears that he did support each of his conclusions with evidence more than sufficient to pass muster.  Notably, Blackburn does not challenge the weight the ALJ assigned to the opinions of consulting physicians, nor does she challenge the findings of those physicians.

Blackburn has submitted additional medical records with her brief, the vast majority of which relate to treatment she sought subsequent to the ALJ's decision, most significantly

breast reduction surgery apparently sought in an effort to reduce overall pain. "Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision and therefore does not meet the materiality requirement." *Getch v. Astrue,* 539 F.3d 473 (7th Cir. 2008). Those additional records submitted which do not post-date the ALJ's decision, while confirming symptoms consistent with her hypothyroidism and obesity, do not provide objective evidence of any resulting functional incapacity–the same problem the ALJ noted with regard to Blackburn's medical evidence

Our review of the record indicates that in reaching his conclusion regarding Blackburn's RFC, the ALJ properly weighed all of the evidence, including, among other things, medical findings, treatment history, state agency physician and psychologist evaluations and assessments, and Blackburn's own testimony. Blackburn also argues that she knows of no job which she could perform in light of her medical difficulties, but substantial evidence supports the ALJ's finding that Blackburn, given her RFC for a full range of medium unskilled work, could perform a substantial number of jobs. Section 203.00(b) of the Medical- Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, which the ALJ relied upon, provides that "[t]he functional capacity to perform medium work represents such substantial work capability at even the unskilled level that a finding of disabled is ordinarily not warranted . . . ."

### *Conclusion*

There is substantial evidence in support of the ALJ's decision in this case and Blackburn has not shown that he erred in some other manner. Accordingly, judgment shall

issue affirming the Commissioner's decision.

    IT IS SO ORDERED.  02/18/2010

                                                          Hon. William T. Lawrence, Judge
                                                          United States District Court
**Copy via United States Mail to:**          Southern District of Indiana

VALERIE J. BLACKBURN
9117 Briergate Ct. #E
Indianapolis, IN 46229
Copies via electronic notification to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov